**SIGNED THIS: February 15, 2017**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SAMMY MAYFIELD PIERCE, | ) | Case No.   15-81012 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BART WINKLER and ROSE LAKE | ) | |
| DEVELOPMENT, INC., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.  15-8056 |
| | ) | |
| SAMMY MAYFIELD PIERCE, | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on the motion for summary judgment filed by the

Defendant, Sammy Mayfield Pierce (Debtor), on the complaint filed by Bart Winkler and Rose

Lake Development, Inc., the Plaintiffs, seeking a determination that the Debtor's liability to them

under a settlement agreement is nondischargeable pursuant to section 523(a)(19) of the

Bankruptcy Code.

**Background**

The Debtor was the developer of a unique process to produce ethanol from corn that involved transforming the ethanol production by-product into a food additive for human consumption. The Debtor operated this business under a conglomerate of several different entities using the trade name "EnerGenetics." During 2008, the Debtor was soliciting investors using a private placement memorandum issued by one of his companies, EnerGenetics Energies, LLC. In response to that private placement memorandum, the Plaintiffs invested the sum of $1 million near the end of 2008. Eventually suspecting fraud, the Plaintiffs filed suit in April, 2013, against the EnerGenetics entities, the Debtor, and one of his business associates, Scott Hewitt, and Hewitt, Inc. The lawsuit, filed in Iowa state court, was concluded by a settlement agreement in September, 2014, prior to the commencement of the bankruptcy case.

The complaint alleged violations of the federal Securities Exchange Act of 1934, the state securities laws of Iowa and Minnesota, as well as common law causes of action for fraud in the inducement, breach of contract and unjust enrichment. Under the terms of the settlement agreement, the Debtor, the EnerGenetics entities, Hewitt, Inc. and Scott Hewitt, agreed to pay the Plaintiffs the sum of $1 million in installments of $10,000, $20,000 and a final payment of $970,000 due June 30, 2015. The state court action was dismissed with prejudice, as required by the settlement agreement, on September 12, 2014. The agreement contained a "no admission of liability" clause by which the parties agreed that neither party admitted the allegations of the other and that the agreement represented a compromise of all disputed claims. As a remedy for default, the Debtor was required to execute a confession of judgment for entry in the Iowa state court confessing judgment in favor of the Plaintiffs in the amount of $1 million, plus interest, which the Plaintiffs had the right to file immediately upon any payment default. The agreement

2

also contained a mutual release provision whereby the parties released each other from any and all claims that existed as of August 13, 2014, the date of settlement, except for the obligations contained in the settlement agreement and the confession of judgment, if filed. The Debtor made the first two payments in September, 2014 and January, 2015, as called for by the agreement, but failed to make the payment of $970,000 due on June 30, 2015. Instead, he filed a voluntary petition under Chapter 7 of the Bankruptcy Code on that same day.

The Plaintiffs filed an adversary complaint under Bankruptcy Code section 523(a)(19), alleging that they invested $1,000,000 in a private placement memorandum offered by EnerGenetics Energies, LLC, an entity directly or indirectly controlled by the Debtor, which private placement memorandum constituted a "security," as defined by federal and applicable state law, that contained a material misrepresentation or omission upon which the Plaintiffs relied. The Plaintiffs seek a determination that the debt resulting from the settlement, or alternatively, from a judgment to be entered by this Court, is nondischargeable. The Debtor moved for summary judgment.

The Debtor makes three related arguments in support of his motion for summary judgment.  First, focusing on the settlement agreement itself and relying on decisions regarding the preclusive effect of settlement agreements under Iowa law, the Debtor contends that the settlement agreement constitutes a valid, binding and enforceable contract, clearly evidencing an intent to release all causes of action that existed as of August 13, 2014, whether known or unknown. Since the adversary complaint is based upon alleged securities fraud that occurred prior to August 13, 2014, the Debtor contends it is expressly precluded as a matter of contract law. Second, the Debtor asserts that the Plaintiffs' filing of an adversary complaint is itself precluded by the dismissal of the state court lawsuit with prejudice. Third, since in the settlement

3

agreement the Debtor did not admit that he violated any securities laws, he argues that the Plaintiffs are barred from attempting to prove in this adversary proceeding what they failed to establish in the state court case.

Where a prepetition settlement of a state court lawsuit becomes an issue in a subsequent bankruptcy dischargeability proceeding, it is usually because the creditor is relying on the settlement agreement to preclude the debtor from relitigating issues of fact resolved in the earlier suit. In that event, the debtor might argue, defensively, that a "no admission of liability" clause in the settlement agreement prevents the creditor from obtaining summary judgment on the basis of issue preclusion. In an unusual twist, the Debtor is attempting to use his settlement agreement, and the "no admissions" clause, offensively, as grounds to grant summary judgment in his favor.

## ANALYSIS

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. A factual issue is material only if resolving it might change the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmovant to go beyond the pleadings and come forward with specific facts showing that there is a genuine

issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

Under section 523(a)(19), added to the Bankruptcy Code by section 803 of the Sarbanes-Oxley Act of 2002, Pub.L.No. 107-24, section 803(3), a discharge in bankruptcy does not discharge an individual debtor from any debt:

> (19) that--
>  (A) is for--
>   (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>   (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>  (B) results, before, on, or after the date on which the petition was filed, from--
>   (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>   (ii) any settlement agreement entered into by the debtor; or
>   (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. §523(a)(19). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 clarified the statute's temporal limitation set forth in subparagraph (B), to expressly permit a post-petition adjudication or settlement to satisfy that requirement.

As an initial matter, the Debtor fails to draw a clear distinction between the doctrines of claim and issue preclusion. As discussed below, it is well-established that judgments and dismissals of non-bankruptcy causes of action almost never have claim preclusive effect in a dischargeability proceeding brought under section 523(a) of the Bankruptcy Code. Generally, res

judicata is the doctrine of preclusion that applies to dismissals with prejudice pursuant to

settlement agreements. *Siddiqi v. O'Leary*, 1990 WL 179719, *1 (N.D. Ill.). As the Supreme

Court has recognized, settlements ordinarily occasion no issue preclusion unless it is clear that

the parties intend their agreement to have such an effect. In most circumstances, settlements

preclude any further litigation on the claim presented but do not preclude further litigation on

any of the issues presented. *Arizona v. California*, 530 U.S. 392, 414 (2000). This follows from

the fact that because settlements are intended to cut litigation short, in advance of trial, none of

the issues are "actually litigated," which is necessary for the application of issue preclusion. *Id.*

Arguments similar to those made by the Debtor were made to and rejected by the United

States Supreme Court in *Brown v. Felsen*, 442 U.S. 127 (1979), where a creditor's prepetition

lawsuit was settled by a stipulation and judgment. Neither the stipulation nor the resulting

judgment indicated the nature of the cause of action on which the debtor's liability to the creditor

was based. After the debtor filed for bankruptcy relief under the Bankruptcy Act, the creditor

initiated a proceeding to have his judgment debt determined nondischargeable as having arisen

out of the debtor's fraudulent conduct. The debtor argued that the prior state court proceeding did

not result in a finding of fraud, and contended that res judicata barred relitigation of the nature of

the creditor's debt, even though the question of dischargeability had not been at issue in the state

court.

Affirming the lower courts, the Court of Appeals for the Tenth Circuit held that in

determining the dischargeability of a debt previously reduced to judgment, the bankruptcy court

and district court had properly confined their review to the judgment, pleadings, exhibits, and

stipulation, declining to hear or consider other evidence. Applying the doctrine of res judicata

and noting that neither the stipulation nor the judgment mentioned fraud, the court held that the

stipulation and judgment were conclusive as to the nature of the debtor's liability. Before the Supreme Court, the debtor argued that the creditor voluntarily chose not to press the question of fraud in the state court proceeding, contending that because the stipulation and judgment made no reference to fraud, the creditor was now barred from litigating that issue since it had been raised and could have been adjudicated in the state court lawsuit.

Writing for a unanimous court, Justice Blackmun recognized that applying the doctrine of res judicata in a nondischargeability proceeding is atypical. 442 U.S. at 132. While res judicata promotes finality, a judgment creditor who brings a nondischargeability action is neither asserting a new ground for recovery nor attacking the validity of the prior judgment. Instead, responding to the threat of discharge interposed by the debtor's bankruptcy case, the creditor asks the bankruptcy court to adjudicate, under bankruptcy law, whether or not the debt will be discharged. This issue is different from whether a debt exists in the first place, and is not subject to adjudication until after the bankruptcy case is filed, since in the prepetition collection suit, the debtor's bankruptcy is still "hypothetical." *Id*. at 135. Refusing to apply res judicata would permit the bankruptcy court to make an accurate determination whether the debtor in fact committed the alleged fraud, the type of question into which Congress intended the bankruptcy court to conduct the "fullest possible inquiry" to resolve. *Id.* at 138.  The focus of the inquiry should be whether the debt arose out of the debtor's conduct proscribed by the nondischargeability provision and not the manner by which the state court lawsuit was resolved. *Id.*  Rejecting the debtor's contention that res judicata applies, the Supreme Court held that the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of the debt.

*Brown v. Felsen* stands for the proposition that where a debt sought to be excepted from discharge in bankruptcy arises out of a settlement agreement that resolved a prior lawsuit, and where the settlement documents contain no admissions or stipulations concerning the basis of liability, the bankruptcy court is charged with looking behind the settlement documents to determine whether the nature of the debt, as shown by the debtor's conduct, fits within the scope of the nondischargeability provision at issue, which inquiry is not barred by the doctrine of claim preclusion.

Twenty-four years later, the Supreme Court issued its opinion in *Archer v. Warner*, 538 U.S. 314 (2003), modernizing *Brown's* rationale by applying it to a case under the Bankruptcy Code. After buying a business from the Warners, the Archers sued them for fraud connected with the sale. After both sides agreed to settle on terms that included a $100,000 promissory note from the Warners, mutual releases were executed that contained a "no admission of liability" provision, and the Archers voluntarily dismissed the state court lawsuit with prejudice. In the Warner's bankruptcy case, Mr. Warner conceded the nondischargeability of the note while his wife disputed it.  The Archers alleged the note was nondischargeable under section 523(a)(2)(A), as a debt for money obtained by fraud. The lower courts found the note dischargeable, with the Fourth Circuit Court of Appeals reasoning that the settlement agreement, releases and promissory note had worked a novation, resulting in the old fraud debt being replaced by a new debt, that was not for money obtained by fraud, but for money promised in a settlement agreement, that, as such, was dischargeable.

The Supreme Court reversed, reasoning that *Brown* governed the outcome, based on its holding "that the Bankruptcy Court should look behind that stipulation to determine whether it reflected settlement of a valid claim for fraud." 538 U.S. at 320.  While the Court in *Brown* had

used that principle to reject the doctrine of res judicata as a bar to the bankruptcy court's inquiry into the "true nature of the debt," as determined by the debtor's conduct, the Court in *Archer* found it an equally compelling basis to reject the state law doctrine of novation as preclusive. *Archer* reiterates *Brown's* reasoning that the change in the nondischargeability provision from fraud "judgments" to the broader term "liabilities," indicated that Congress intended that all debts arising out of fraud are excepted from discharge no matter what their form, including debts "embodied in the settlement of a fraud case." 538 U.S. at 321. Settlements that include a contractual release are treated no differently than those that do not, since dismissal of the underlying suit has the same res judicata effect as a release. *Id.*

The Debtor studiously avoids characterizing his settlement with the Plaintiffs as a "novation," as that theory of defense was sent to the gallows by the Supreme Court in *Archer*. Despite the difference in how his theories are labeled, the factual similarity between the Debtor's settlement and the ones at issue in *Brown* and *Archer* is striking, and the breadth of the Supreme Court's reasoning is undeniable.

In an attempt to distinguish *Brown* and *Archer*, the Debtor contends that section 523(a)(19) differs from section 523(a)(2)(A) by requiring not only that the debt arise out of securities fraud or related activity, but also, under section 523(a)(19)(B), that it "results from," which the Debtor construes to mean "culpability established in," the settlement agreement. He argues, in effect, that where a settlement agreement does not contain sufficient admissions or stipulations to demonstrate that the settlement payment obligation is a debt within the scope of section 523(a)(19)(A), and where it contains a blanket release of all pre-settlement causes of action, the creditor is precluded from litigating in the bankruptcy court the true nature of the debt. In the Debtor's viewpoint, the settlement agreement was the one and only chance for the Plaintiffs to

link the settlement payments to the Debtor's conduct. By including a "no admission of liability" provision, the Debtor believes he wins, end of story.

The Debtor misconstrues the purpose of section 523(a)(19)(B), which is to preempt the common law doctrine of collateral estoppel (issue preclusion), by expanding the preclusive effect given to the disposition of prepetition securities fraud lawsuits and administrative proceedings so as to make it easier for creditors to obtain nondischargeability determinations, by giving preclusive effect to certain dispositions of matters where securities fraud was at issue, even though the fraud was not "actually litigated." *Tripodi v. Welch*, 810 F.3d 761, 766-67 (10th Cir. 2016); *In re Lee*, 536 B.R. 848, 859 (Bankr. N.D. Cal. 2015); *In re Pujdak*, 462 B.R. 560, 577-78 (Bankr. D.S.C. 2011). The legislative history to section 523(a)(19) expresses a congressional concern that securities fraud "settlements may not have the same collateral estoppel effect as judgments obtained through fully litigated legal proceedings." 148 Cong. Rec. S1783-01, *S1787 (daily ed. March 12, 2002) (statement of Sen. Leahy), 2002 WL 384616, *8. *Cf. Meyer v. Rigdon*, 36 F.3d 1375, 1379-80 (7th Cir. 1994) (section 523(a)(11) preempts collateral estoppel by expanding preclusive effect to default judgments and settlement agreements where debtor's fraudulent conduct was not actually litigated).

The Debtor lumps together the doctrines of claim preclusion and issue preclusion. But if section 523(a)(19)(B) is intended to assist creditors by expanding the collateral estoppel effect of settlements, how could it also be that the same provision disadvantages creditors by applying the doctrine of claim preclusion in a dischargeability proceeding, contrary to *Brown v. Felsen*? The Debtor fails to acknowledge, much less reconcile, this contradiction.

The Debtor relies upon *In re Tills*, 419 B.R. 444, 452-53 (Bankr. S.D. Cal. 2009), holding that a settlement agreement that settles allegations of securities violations but is silent as

10

to fault may be sufficient to preclude further litigation of the debtor's conduct, but where the agreement contains a provision expressly stating that fault and liability are not conceded, it is not sufficient to establish, by itself, that the debtor committed the securities violations. While a "no admission of liability" provision in a settlement agreement would be a reason to deny a creditor's motion for summary judgment, it is not a reason to grant summary judgment in favor of a debtor. The Debtor's position that a "no fault" provision in a settlement entered in a case involving securities violations makes the debt *ipso facto* dischargeable, finds no support in the decided cases. *Tills* stands for the proposition that where a settlement agreement is inconclusive on the issue of the debtor's culpability, that issue, for dischargeability purposes, must thereafter be litigated to conclusion as contemplated by section 523(a)(19)(B), which permits the litigation to occur "before, on, or after the date on which the petition was filed." *Tills* does not support the Debtor's position. *See also In re Drapeau*, 2008 WL 1787132, *3 (Bankr. W.D. Wash.) (absent stipulated findings of fact sufficient to establish nondischargeability, a settlement agreement or stipulated judgment of a non-bankruptcy court is not preclusive on the question of dischargeability).

The Debtor's theory that the "no admission of liability" clause coupled with the blanket release and the dismissal with prejudice entitle him to summary judgment is, in effect, founded on the doctrine of claim preclusion. The Debtor ignores, however, the teaching of *Brown* and its progeny that res judicata does not apply to dischargeability actions in bankruptcy because the prior lawsuit, establishing liability on the basis of a non-bankruptcy cause of action, and a subsequent action under section 523(a), intended to determine whether the claim based upon that liability, once established, is dischargeable, do not involve the same cause of action. *See In re Phillips*, 2010 WL 4916633, *2 (C.D. Cal.); *In re Jahrling*, 514 B.R. 565, 570 (Bankr. N.D. Ill.

11

2014); *In re McCaulley*, 2013 WL 3052843, n.2 (Bankr. E.D. Mich.); *In re Murphy*, 297 B.R. 332, 347 (Bankr. D. Mass. 2003).   The only way that res judicata could possibly apply in a nondischargeability action, is if the state court, in the exercise of concurrent jurisdiction, actually decided the issue of dischargeability.  *In re Sveum*, 2013 WL 3404097, *2 (Bankr. W.D. Wisc.).

In *Archer*, even though the settlement completely released each underlying state law claim, the release did not preclude the subsequent determination that the settlement payment obligation constituted a debt for money obtained by fraud. Bankruptcy courts have applied that reasoning, to the same effect, in dischargeability proceedings brought under section 523(a)(19). See *Tills, supra*; *In re Schwartz*, 2007 WL 3051865 (Bankr. S.D. Tex.).  *Schwartz* involved a settlement of several related causes of action including one for violation of the Texas Securities Act. The settlement included a blanket release, a "no admission of liability" provision and a dismissal with prejudice of the state court lawsuit. *Id.*, n.1 and n.2. As part of the settlement, the debtor executed a $750,000 promissory note in favor of the creditor. After the debtor defaulted, the creditor filed a separate suit on the note and obtained a judgment for the amount due.

Moving for summary judgment in the adversary proceeding, the debtor contended that the claim evidenced by a judgment on the note did not arise out of fraud. He argued that the claims for fraudulent conduct were swallowed by the settlement agreement. Rejecting the debtor's position, and following *Brown* and *Archer*, the court in *Schwartz* reasoned that in dischargeability proceedings, "the relevant inquiry focuses on the conduct from which the debt originally arose. Liable parties cannot erase the history of a debt's origin through a settlement and subsequent breaches of the settlement. *Archer* and *Brown* hold that bankruptcy courts should look beyond the judgment or settlement to determine whether the underlying conduct included conduct prohibited by section 523." *Id.* at *3. The court reached this result notwithstanding that

the underlying fraud was "twice removed from the disputed debt," first by the settlement and then by the judgment.

This Court agrees that in section 523 proceedings, bankruptcy courts must focus on the conduct from which the debt at issue originally arose, even though the debt may subsequently have taken on other documentary forms as a result of litigation, administrative proceedings or settlement negotiations.  The general principle directing bankruptcy courts to examine the underlying nature of a debt – regardless of its form – having been followed repeatedly, is beyond dispute.  *In re Burrell-Richardson*, 356 B.R. 797 (BAP 1st Cir. 2006). It is now clear that creditors do not lose their rights in bankruptcy merely because they diligently exercise their collection rights beforehand. This issue is decided as a matter of federal law, which preempts general principles of state novation and preclusion law to the contrary. The Debtor's reliance on Iowa case law is misdirected.

It is worth noting that the release executed by the Plaintiffs makes no reference to bankruptcy or dischargeability, and is effective only as to those claims existing on or before the date of the settlement agreement excepting, of course, the Debtor's agreement to pay the Plaintiffs $1 million. Whether a creditor's prepetition waiver of the right to pursue a nondischargeability action in bankruptcy is binding is not at issue.

For his final argument in support of summary judgment, the Debtor contends that since the Plaintiffs must prove a securities law violation, which was not established in the "no fault" settlement of the now-dismissed Iowa lawsuit, the timeliness of their complaint to determine dischargeability must be measured against the limitations periods set forth in the state and federal securities statutes.  This argument conflates the separate issues as to whether a valid debt exists as of the petition date and whether that debt is dischargeable.

It is well-established that there are two distinct issues in a dischargeability proceeding. The first, the establishment of the debt itself, is governed by the applicable non-bankruptcy statute of limitations --- if suit is not brought within the limitations period, the debt cannot be established. The second, the question of dischargeability, is a distinct issue governed solely by the limitations periods established by bankruptcy law. *In re Collazo*, 817 F.3d 1047, 1051-52 (7th Cir. 2016). Where the debt has already been established prepetition, the non-bankruptcy statute of limitations is immaterial in the dischargeability proceeding. *In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994).

The Debtor concedes that the Iowa lawsuit was timely filed and that the settlement agreement created an obligation, a debt, for him to pay $1 million to the Plaintiffs, a debt that was valid and enforceable against him when he filed for bankruptcy relief on June 30, 2015. Under *Brown* and *Archer,* it must now be determined whether that debt may be excepted from discharge in this adversary proceeding, which the Plaintiffs were permitted to file "at any time." See Fed.R.Bankr.Pro. 4007(b).  The statutes of limitations that applied to the Iowa state court complaint are inapplicable to the adversary complaint.

For the foregoing reasons, the Debtor's motion for summary judgment will be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

### ###